**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Joyce Teodecki,** ) | **CASE NO. 1:11 CV 2737** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **vs.** ) | |
| ) | |
| **Litchfield Township, et al.,** ) | **Memorandum of Opinion and Order** |
| ) | |
| **Defendants.** ) | |

**INTRODUCTION**

This matter is before the Court upon Defendants' Rule 12 Motion to Dismiss First Amended Complaint (Doc. 12). This is a First Amendment case. For the reasons that follow, the motion is GRANTED with respect to the federal claims, *i.e.*, counts one and six. The Court declines to exercise jurisdiction over the remaining state law claims.

**FACTS**

Plaintiff, Joyce Teodecki, filed this lawsuit against defendants, Litchfield Township ("Litchfield"), Nancy Wargo, Michael Pope, and Dennis Horvath (sometimes, collectively, the "Individual Defendants"), alleging wrongdoing in connection with plaintiff's resignation from

1

employment with defendant Litchfield. The Individual Defendants are Trustees of Litchfield. For the purposes of ruling on defendants' motion, the allegations in the complaint are presumed true.

Plaintiff acted as the duly appointed Fire Chief for Litchfield.

On January 24, 2011, the Individual Defendants met with Joseph McDermott, an investigator, to investigate the activities of plaintiff in her capacity as the Fire Chief.

On July 25, 2011, McDermott prepared a report detailing the investigation. According to the complaint, plaintiff and Litchfield agreed that plaintiff would resign as Fire Chief in exchange for Litchfield's agreement to keep the investigation confidential. The parties' understandings are set forth in a resolution adopted by Litchfield on July 25, 2011. In a handwritten notation, the following appears: "The results of the investigation shall be kept confidential. [sic] between the Medina County Prosecutor's Office and the. [sic] Investigator."

Thereafter, plaintiff resigned her post as Fire Chief.

In October of 2011, plaintiff drafted an "open letter" to the citizens of Litchfield. The letter criticized some of the Individual Defendants and spoke about the inner workings of the fire department. In addition, the letter provides that:

> [Litchfield] has wasted valuable monies on a private investigator. His job was to uncover something lurking in my professional conduct. He received $4000.00 of township money to find nothing they could prosecute me for. It was the trustees who determined his file would not be opened to the public. That was the part of the agreement they set before me when I had had enough harassment after 2 years and handed my resignation to them.

Following the issuance of plaintiff's letter, the trustees held a special meeting at which they unanimously voted to "revoke" the confidentiality provision in the "agreement." Plaintiff alleges this was done in retaliation for plaintiff's exercise of her First Amendment rights.

2

At a November 14, 2011 trustees meeting, defendant Wargo read a statement, which included the following:

> [Plaintiff] insisted that we handwrite a clause in our resolution stating that all investigative information will remain private between the prosecutor's office and the investigator.  Out of respect for the many years that [plaintiff] served Litchfield residents...we, as trustees, allowed that clause to be handwritten in the resolution.  Since [plaintiff] has taken the step to make this information public information in her Open Letter to the Residents of Litchfield, we have removed that clause from the resolution.  It really is unfair for [plaintiff] to ask for privacy and then to break the clause she insisted on having added to the resolution.  [Plaintiff] and her attorney met with the prosecutors office and therefore, [plaintiff] knew that the charges included allegedly being guilty of misfeasance, malfeasance, nonfeasance and misconduct in office, creating a hostile work environment and gross neglect of duty.  [Plaintiff] chose to resign from the department rather then [sic] face these charges....

In addition, defendant Pope filed a complaint against plaintiff with the Ohio Elections Committee alleging wrongdoing in connection with the publication of plaintiff's October open letter to the public.

Thereafter, plaintiff filed this lawsuit asserting six claims for relief.  Count one is a claim for First Amendment retaliation brought under 42 U.S.C. § 1983.  Count two appears to be a breach of contract claim and count three alleges intentional infliction of emotional distress.  Count four is a claim for defamation and count five asserts malicious prosecution.  Count six is a claim for violation of plaintiff's constitutional right to privacy and is asserted under 42 U.S.C. § 1983.

Defendant moves to dismiss the complaint and plaintiff opposes the motion.  Defendant did not file a reply brief.

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in

3

favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993). Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Fingers v. Jackson-Madison County General Hospital District,* 101 F.3d 702 (6th Cir. Nov. 21, 1996), *unpublished*. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

In addition, a claimant must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id*. at 1949 (citations and quotations omitted). *See also, Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir.2009).

**ANALYSIS**

4

As an initial matter, the Court notes that defendants' motion, although it purports to seek dismissal of the entire case, addresses only a few claims. Moreover, with respect to the claims that are addressed, the analysis is conclusory in fashion. Nonetheless, the Court will endeavor to respond to the parties' arguments.

1. Count one (First Amendment retaliation)

In count one, plaintiff asserts that defendants violated the First Amendment by retaliating against her for speaking out on public matters in her October letter. Defendants argue that "the First Amended Complaint is clearly based upon alleged breach of contract and defamation." Defendants then proceed to argue that no confidentiality agreement exists and that even if such an agreement exists, plaintiff breached the agreement first. Defendants also argue that plaintiff's complaint fails to allege an "adverse injury." In response, plaintiff claims that the complaint alleges a First Amendment retaliation claim. According to plaintiff, defendant Wargo made public statements about the investigation into plaintiff's job performance in retaliation for public statements made by plaintiff.

> In order to state a claim for First Amendment retaliation, plaintiff must allege: (1) that she was engaged in a constitutionally protected activity; (2) that defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Mattox v. City of Forest Park*, 183 F.3d 515, 520 (6th Cir. 1999)(*citing Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).

Thus, an "adverse action" is one that would deter a person of "ordinary fitness" from exercising a constitutional right. *Id.* at 521.

The standard is an attempt to balance the tension between two propositions: First, the

5

> injury suffered need not be great because there is no justification for harassing people for exercise of their constitutional rights; but second, a constitutional tort– like any tort– requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment.

*Id*.

Plaintiff relies primarily on *Bloch* in support of her claim.  In *Bloch*, the plaintiff was raped by an unknown assailant.  Later, unhappy with the investigation, plaintiff publically criticized the police investigation.  In response, the police department held a press conference and released "highly personal and extremely humiliating" details of the rape, some of which plaintiff had not told even her husband.  Plaintiff argued that the police department's right to respond to criticism does not include the release of "irrelevant, humiliating, and confidential information."  The Sixth Circuit accepted plaintiff's argument and held that plaintiff stated a claim for First Amendment retaliation.

On the other hand, defendants rely on *Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999).  In *Mattox*, a former city councilwoman and former firefighter brought a First Amendment retaliation claim after defendants publically released information about plaintiffs.  Plaintiffs voiced concerns about certain fire department practices.  According to plaintiffs, defendants retaliated by releasing a copy of the investigative report, which included personal information about plaintiffs.  Specifically, the report included personal information about a childhood trauma suffered by the former firefighter and, in addition, information regarding plaintiff's potential affairs with other firefighters.  The Sixth Circuit held that the release of the information, even if done intentionally for the purpose of punishing plaintiff for exercising her First Amendment rights, did not rise to the level of a constitutional violation.  According to the Sixth Circuit, the traumatic childhood incident was not the focus of the report.  Moreover, the

court expressly noted that information about office affairs was "tangentially related" to charges made about the fire department. As such, plaintiff did not suffer a cognizable injury.

The Court finds this case more analogous to *Mattox*. Here, plaintiff openly criticized defendants for wasting the taxpayers' money on an investigator and then insinuated that defendants were responsible for keeping the results of the investigator's report from the public. Defendants directly responded to plaintiffs' criticisms and revealed information related to plaintiff's job performance as a public servant. There is no allegation that defendants released "irrelevant" information. The Court further finds that the information released is not so sensitive or of a humiliating nature that constitutional redress is appropriate. Rather, the release of information related to poor job performance– especially here, where the information relates to past job performance– does not rise to the level of a constitutional injury. Defendants were entitled to exercise their own First Amendment rights in direct response to plaintiff's exercise of her constitutional rights. *See, e.g., Samad v. Jenkins*, 845 F.2d 660, 663 (6th Cir. 1988)("ironically, plaintiff is accusing defendants of chilling his first amendment freedoms by reserving their own first amendment right to speak out").[1] Accordingly, the Court finds that plaintiff fails to allege an "adverse action" that would "deter a person of "ordinary fitness" from exercising a constitutional right." As such, plaintiff fails to state a claim for relief in count one.

2.     Count six (constitutional right to privacy)

Defendants do not separately move to dismiss count six, although defendants' motion is directed at the complaint in its entirety. In response, plaintiff argues that the complaint states a

---

[1] The Court notes that any "confidentiality agreement," would not appear to be relevant to plaintiff's First Amendment claim.

claim for violation of the "informational right to privacy." According to plaintiff, defendants released the results of an investigation in violation of O.R.C. § 149.43, which excludes records of investigations resulting in no charges from the definition of "public record." Plaintiff claims that she, as an uncharged suspect, had an expectation of privacy in this information.

The Sixth Circuit has recognized a constitutional right to "informational" privacy arising under the Due Process Clause only under narrow circumstances.

> A plaintiff alleging a violation of her right to informational privacy must therefore demonstrate that the interest at stake relates to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty. Only after a fundamental right is identified should the court proceed to the next step of the analysis– the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private.

*Lamert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). It appears that the Sixth Circuit has recognized the right to informational privacy in only two cases. *See*, *Id.* (holding that only twice has the Sixth Circuit found the existence of a constitutional right to informational privacy); *Lee v. City of Columbus*, 636 F.3d 245 (6th Cir. 2011)(distinguishing only two cases in determining that no right to informational privacy existed). In *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), the Court concluded that a constitutional right to informational privacy exists with respect to the disclosure of detailed personal information, including names, phone numbers, addresses, and social security numbers of undercover police officers and their family members, because there existed a fundamental interest in preserving the lives of the officers and their family members. The Sixth Circuit concluded that the fundamental right to life and safety supported the existence of the right to information privacy. In *Bloch*, *supra*, the Sixth Circuit held that a rape victim had an informational privacy right rooted in the due process clause. There, the court concluded that the "fundamental right to sexuality and choices about sex" are

8

"interests of an intimate nature which define significant portions of our personhood." The court concluded that these interests have historically been deemed fundamental rights. As such, they are sufficient to support a claim for deprivation of a constitutional right to informational privacy.

Here, unlike in *Kallstrom* and *Bloch*, plaintiff fails to establish that the interest at stake relates to a fundamental right. Notably, she does not allege that she was subjected to a risk of bodily injury or that intimate information was disclosed to the public. As noted in *Wurzelbacher v. Jones-Kelley*, —F.3d— (6th Cir. 2012), 2012 WL 997390, the Supreme Court has identified 'matters relating to marriage, procreation, contraception, family relationships, and child rearing and education" as fundamental. No such interest is implicated by the disclosures at issue in this case. Accordingly, plaintiff fails to state a claim for which relief may be granted.[2]

3.  State law claims

Having dismissed all of the federal claims[3], this Court declines to exercise supplemental jurisdiction over the remaining state law claims. *Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220 (6th Cir. 1997).

**CONCLUSION**

For the foregoing reasons, Defendants' Rule 12 Motion to Dismiss First Amended

---

[2] The Court notes that whether the information is deemed "public" for purposes of the Ohio Revised Code does not determine whether a fundamental liberty interest is at stake. Rather, the disclosure of documents may be statutorily prohibited, yet their release nonetheless does not implicate a fundamental right. *See e.g., Jarvis v. Wellman*, 52 F.3d 125 (6th Cir. 1995)("Disclosure of plaintiff's medical records does not rise to the level of a breach of a right recognized as 'fundamental' under the Constitution.").

[3] It is apparent from the face of the complaint that complete diversity is lacking.

9

Complaint (Doc. 12) is GRANTED with respect to the federal claims, i.e., counts one and six.

The Court declines to exercise jurisdiction over the remaining state law claims.

  IT IS SO ORDERED.


              /s/ Patricia A. Gaughan
              PATRICIA A. GAUGHAN
              United States District Judge

Dated: 4/10/12